IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELVIN C. SORGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:2005-433 |
| ) | |
| JO ANNE B. BARNHART, ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 9-10, 13-15). This Court has jurisdiction of this matter pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 9) and grant the Motion for Summary Judgment filed by the Commissioner of Social Security (Document No. 13).

The Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on April 1, 2004, alleging disability since June 1, 2002, due to focal syringomyelia, thoracic spondylitis, and neck, shoulder and lower back pain. R. p. 15. After the initial denial of this claim, the Plaintiff filed a timely request for a hearing. R. p. 37. On May 9, 2005, a hearing was held in Altoona, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo ("ALJ"). R. p. 300. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 302-334. Ms.

1

Irene Montgomery, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 334-345.

On June 7, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. p. 23. The Appeals Council denied the Plaintiff's request for review on September 16, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. p. 6. The Plaintiff filed a complaint in this matter on November 17, 2005. Document No. 1. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on January 20, 2006. Document No. 4. The Plaintiff and the Commissioner filed cross-motions for summary judgment on March 23, 2006, and May 1, 2006, respectively. Document Nos. 9 & 13.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See *id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all

>the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and deference must be given to the Commissioner's findings unless there is an absence of substantial evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step process as follows:

>If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003) (footnotes omitted; brackets in original).

The Plaintiff met the disability insured status requirements of the Act on the date of his alleged onset of disability, but he had sufficient quarters of coverage to remain insured only through June 30, 2002. Therefore, the ALJ's inquiry was limited to the question of whether the Plaintiff had been under a statutory disability from June 1-30, 2002. R. pp. 15-16. The ALJ determined that the Plaintiff had not engaged in substantial gainful activity subsequent to the alleged onset of his disability. R. p. 21. Proceeding to the second step of the sequential evaluation process, the ALJ concluded that the Plaintiff suffered from degenerative disc disease of the cervical and lumbar spines and mild syringomyelia of the thoracic spine, which were deemed to be severe impairments for purposes of 20 C.F.R. § 404.1520(a)(4)(ii). R. p. 22. These impairments, however, did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* The ALJ found that the Plaintiff was unable to perform his previous work as a welder or an auto mechanic. R. p. 22. The ALJ determined that the Plaintiff retained the residual functional capacity to perform work at the medium exertional level which did not involve climbing ropes, ladders and scaffolds, or more than occasional stooping. *Id.* It was further determined that, given the Plaintiff's age, educational background[1] and residual functional capacity, he could work as a third-shift custodian or laundry laborer. *Id.* Ms. Montgomery's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. p. 337.

---

[1] During the month of June, 2002, the Plaintiff was fifty-two years old. R. p. 22. He is a high school graduate. *Id.*

In support of his motion for summary judgment, the Plaintiff makes two distinct arguments. First, he contends that the ALJ's determination of his residual functional capacity is not supported by substantial evidence. Document No. 10 pp. 5-7. Second, he argues that the ALJ failed to properly develop the administrative record before making his decision. *Id.* pp. 8-9. The Court will proceed to address each argument in turn.

20 C.F.R. § 404.1567(c) provides:

Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary[2] and light[3] work.

The ALJ determined that the Plaintiff could perform work at the medium exertional level. R. p. 22. The Plaintiff argues that this determination is not "supported by substantial evidence" for purposes of the fifth sentence of 42 U.S.C. § 405(g).[4]

The Plaintiff centers his argument on a residual functional capacity assessment form completed by Dr. Gerald Gryczko, a state agency medical consultant, on June 4, 2004. Document No. 10 p. 5. Dr. Gryczko reported that, as of June 30, 2002, the Plaintiff could occasionally lift or carry 20 pounds,

---

[2] 20 C.F.R. § 404.1567(a) provides: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[3] 20 C.F.R. § 404.1567(b) provides: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

[4] The fifth sentence of 42 U.S.C. § 405(g), in pertinent part, provides: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."

5

frequently lift or carry 10 pounds, stand or walk for a total of six hours in an 8-hour workday, and sit for a total of six hours in an 8-hour workday. R. p. 286. The report indicated that the Plaintiff's pushing and pulling abilities were unlimited, and that he had no manipulative, visual, communicative or environmental limitations. R. pp. 286-289. Dr. Gryczko further opined that the Plaintiff was precluded from climbing ramps, stairs, ladders, ropes and scaffolds, and that he was limited to only occasional balancing, stooping, kneeling, crouching and crawling. R. p. 287.

The Plaintiff points out that Dr. Gryczko's report indicated that he was capable of performing only light work, while the ALJ concluded that he could perform work at the medium exertional level. Document No. 10 p. 5. The dispositive question before the Court is whether the ALJ's determination of the Plaintiff's residual functional capacity, which differs meaningfully from Dr. Gryczko's determination, is supported by substantial evidence. At the outset, it is worth noting a few preliminary points. First of all, the issue of a claimant's residual functional capacity is expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). Consequently, the ALJ was not required to give any "special significance" to the source of an opinion with respect to this issue. 20 C.F.R. § 404.1527(e)(3). Secondly, an ALJ may reject an alleged limitation if there is conflicting evidence in the record. *Rutherford v. Barnhart*, 399 F.3d 546, 554-555 (3d Cir. 2005). A claimant's residual functional capacity must reflect only his or her *credibly established* limitations. *Id.* at 554. Where the opinion of a physician is not supported by objective medical evidence, the ALJ is free to conclude that it is outweighed by other evidence contained in the record. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

Objecting to the ALJ's treatment of the medical evidence, the Plaintiff contends that Dr.

Gryczko's report was the only medical report in the record at the time of the ALJ's decision. Document No. 10 p. 5. He argues that the ALJ wrongfully substituted his own opinion for that of the physician, thereby depriving the ultimate decision of "substantial" evidentiary support within the meaning of 42 U.S.C. § 405(g). *Id.* The Plaintiff further asserts that the ALJ discounted evidence that he had undergone aggressive treatment for his back condition, including spinal injections and medication. *Id.* p. 6.

With respect to the Plaintiff's argument regarding his medical condition, it must be remembered that the governing law recognizes "a distinction between the issue of the existence of a medical condition and the issue of the existence of statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). The presence of a severe medical condition is not doubted by the Commissioner. R. p. 22. The dispositive question is whether this condition was disabling during the month of June, 2002. Both the legal question at issue and the period of time in contention are relatively narrow.

The medical report upon which the Plaintiff places primary reliance is one authored by a nonexamining physician. The very cases cited by the Plaintiff emphasize the great weight which should be given to the opinions of *treating* or *examining* physicians. Document No. 10 p. 5. For instance, in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), the U.S. Court of Appeals for the Third Circuit declared that "[a]n ALJ may reject a *treating* physician's opinion outright only on the basis of contradictory medical evidence, but may afford a *treating* physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (emphasis added). Similarly, in *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000), the Court of Appeals explained that, "[i]n choosing to reject the *treating* physician's assessment, an ALJ may not make speculative

7

inferences from medical reports and may reject a *treating* physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks omitted; emphasis added). Thus, the language in the opinions relied upon by the Plaintiff emphasizes the weight to be given to the opinions of *treating* physicians.

Even when the report relied upon by a claimant is submitted by a treating physician, a statement by that physician indicating that the claimant is "disabled" or "unable to work" is not dispositive of the issue. *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). This is even more true when a claimant places primary reliance upon a report from a nonexamining physician. In *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993), the Court of Appeals noted that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason*, 994 F.2d at 1065. It was recognized that when such residual functional capacity reports are unaccompanied by detailed written reports, their reliability is inherently suspect. *Id.* This Court cannot say that the ALJ acted unreasonably in discounting Dr. Gryczko's report.

As the Commissioner points out, the ALJ based his ultimate determination on the medical evidence contained in the record. The Plaintiff testified that he became disabled on June 1, 2002, as a result of a motorcycle accident. R. p. 311. Nevertheless, in a letter dated March 15, 2003, Dr. Zane Gates recommended that the Plaintiff stay active. R. p. 203. The ALJ expressly relied on this letter in his opinion. R. p. 17. A treatment note dated August 29, 2002, just three months after the alleged onset of the Plaintiff's disability, indicates that the Plaintiff was "able to perform his duties at his garage despite soreness." R. p. 127. In addition, the ALJ noted that the Plaintiff's physical examinations since

8

the alleged onset of disability "revealed a mild to moderate loss with cervical and lumbar range of motion, negative straight leg raising, a normal gait, full strength of the upper and lower extremities bilaterally, symmetrical deep tendon reflexes, and intact sensation[.]" R. p. 18. The ALJ did not substitute his own observations for those of the treating physicians. Instead, he based his ultimate decision on the very treatment notes authored by those physicians.

The Plaintiff argues that the ALJ erred in rejecting his subjective complaints. Document No. 10 p. 6. It is true that the Court of Appeals, in *Mason*, explained that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence." *Mason*, 994 F.2d at 1067. In the instant case, however, the ALJ did not completely discount the Plaintiff's allegations of pain. After acknowledging the Plaintiff's testimony regarding "constant pain," the ALJ determined that the clinical and objective findings were inconsistent with an individual who was unable to engage in substantial gainful activity. R. p. 18. Ironically, the ALJ actually assumed that the Plaintiff did experience pain by noting that the evidence did not reveal any muscle wasting or a loss of awareness of pain resulting from his mild syringomyelia. *Id.* The dispositive inquiry was not whether the Plaintiff experienced pain, but rather whether the Plaintiff's pain was *disabling* for purposes of 42 U.S.C. § 423(d)(1)(A).[5] The ALJ's conclusion that the Plaintiff's pain was not disabling is supported by substantial evidence.

In his reply brief, the Plaintiff takes issue with the Commissioner's reliance on his daily activities, contending that none of his activities in the aftermath of the motorcycle accident constituted

---

[5] 42 U.S.C. § 423(d)(1)(A) defines the term "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"

9

substantial gainful activity. Document No. 15 pp. 1-2. In *Frankenfield v. Bowen*, 861 F.2d 405 (3d Cir. 1988), the Court of Appeals determined that it was improper for an ALJ to reject the opinions of three treating physicians based solely on the claimant's testimony that "he took care of his personal needs, performed limited household chores, and occasionally went to church." *Frankenfield*, 861 F.2d at 408. Similarly, in *Swope v. Barnhart*, 436 F.3d 1023 (8th Cir. 2006), the U.S. Court of Appeals for the Eighth Circuit explained that "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Swope*, 436 F.3d at 1026, n. 4, quoting *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). In the instant case, however, the ALJ did not reject the opinions of any treating or examining physicians. Furthermore, while it is true that the activities described by the ALJ did not themselves constitute substantial gainful activity, they did serve as *evidence* of the Plaintiff's ability to engage in substantial gainful activity.

As noted earlier, the ALJ was not required to factor all of the Plaintiff's *alleged* limitations into his residual functional capacity determination. *Rutherford*, 399 F.3d at 554. The ALJ was required, of course, to include all of the Plaintiff's credibly established limitations in his hypothetical question to Ms. Montgomery. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). It is firmly established that "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record[.]" *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Otherwise, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Id.* In this case, it is clear that the ALJ acted within the bounds of his discretion in determining that the Plaintiff did not need an excessive amount of breaks or absences. R. p. 21. A close examination of the

hearing transcript reveals that the ALJ conveyed to Ms. Montgomery all of the limitations that he found to be credibly established by the Plaintiff. R. pp. 335-345. Ms. Montgomery's testimony established that there were jobs existing in the national economy which were consistent with the ALJ's determination of the Plaintiff's residual functional capacity. *Id.* Accordingly, the Commissioner successfully met her burden at the fifth step of the sequential evaluation process.

In his final argument, the Plaintiff claims that the ALJ failed to adequately develop the administrative record.[6] Document No. 10 pp. 8-9. This argument is based primarily on a letter from Dr. Gates to the Plaintiff's attorney, which is dated July 27, 2005. In this letter, Dr. Gates expressed the view that the Plaintiff's back condition precluded him from engaging in substantial gainful activity. R. pp. 293-294. In his brief, the Plaintiff concedes that the record contains no explanation for his failure to request this report sooner. Document No. 10 p. 8. Nevertheless, he argues that the record, as it existed at the time of the ALJ's decision, was not fully developed. For the reasons that follow, this argument is wholly without merit.

In *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), the U.S. Supreme Court

---

[6]The Commissioner refutes this argument only by asserting that the Plaintiff's ongoing work activities subsequent to the accident preclude an award of benefits even if more development of the record was otherwise needed. Document No. 14 pp. 7-8. In his reply brief, the Plaintiff contends that his work activities after the accident did not constitute "substantial gainful activity" within the meaning of 42 U.S.C. § 423(d)(1)(A). Document No. 15 pp. 1-2. It is not necessary for the Court to determine whether the Plaintiff's case should have been dismissed at the first step of the sequential evaluation process. This Court cannot affirm the decision of the Commissioner on a ground other than that which was relied upon by her at the conclusion of the administrative proceedings. *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995, 1999 (1947). Not only did the ALJ base his denial of the Plaintiff's claim on the availability of other jobs existing in the national economy, but he specifically concluded that the Plaintiff had not engaged in substantial gainful activity subsequent to the accident, and that he was unable to perform his past relevant work as a welder or an auto mechanic. R. pp. 21-22. Notwithstanding the incomplete nature of the Commissioner's argument in this Court, the Plaintiff cannot obtain the relief that he seeks without establishing that the Commissioner's decision is not "supported by substantial evidence." 42 U.S.C. § 405(g).

11

noted that "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings." *Sims*, 530 U.S. at 110, 120 S.Ct. at 2085, 147 L.Ed.2d at 87. The Court explained that "Social Security proceedings are inquisitorial rather than adversarial[,]" and that "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims*, 530 U.S. at 110-111, 120 S.Ct. at 2085, 147 L.Ed.2d at 88. Nevertheless, it is clear that the ALJ's duty to "assume a more active role" than a judge in an adversarial proceeding has typically been addressed in cases in which the claimant was unrepresented by counsel. *Livingston v. Califano*, 614 F.2d 342, 345-346 (3d Cir. 1980); *Dobrowolsky v. Califano*, 606 F.2d 403, 407-409 (3d Cir. 1979). "When a claimant appears at a hearing without counsel, the ALJ must scrupulously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)(internal quotation marks omitted), quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Although the ALJ's duty to develop the record is not negated when the claimant is represented by counsel, it is not the ALJ's job to act as the claimant's attorney, or to otherwise usurp the attorney's role as the primary spokesperson on behalf of the claimant's interests. *Musgrave v. Sullivan*, 966 F.2d 1371, 1377 (10th Cir. 1992)("The ALJ must explore facts and evidence unfavorable as well as favorable to the claimant, and although the ALJ has a duty to fully explore the facts, the ALJ does not act as counsel for the claimant."). With that in mind, the Court turns to the facts in the instant case to determine whether the ALJ fulfilled his duty to develop the administrative record.

At the beginning of the hearing, the ALJ specifically asked the Plaintiff's attorney whether he anticipated "a need for post-hearing development." R. p. 304. The Plaintiff's attorney stated that he did not. *Id.* The transcript indicates, literally between the ALJ's question and the attorney's answer to

that question, that several exhibits were received into evidence and made a part of the administrative record. *Id.* Given this context, it is clear that the ALJ's reference to "post-hearing development" was an inquiry as to whether additional evidence would need to be submitted later. The Plaintiff had an opportunity, at that point, to request that additional evidence be submitted after the hearing.

Before the hearing concluded, the ALJ gave the Plaintiff's attorney another opportunity to keep the record open for the submission of additional evidence:

> ALJ: Okay. Counselor, do you have more evidence that you wish to offer today?
>
> ATTY: No, I don't.
>
> ALJ: All right. Do you have any–do you see any need for post-hearing development?
>
> ATTY: I don't believe so Your Honor.
>
> ALJ: Okay. Mr. Sorge, what happens now, we're going to be closing the record at the end of the hearing. And then I write a fact-finding document that say's basically here's what I believe the evidence in the case shows. And then I write several facts. And then from there, that goes to some paralegals and attorneys and we arm wrestle over how the 1,500 pages of rules gets applied to the facts that I think the evidence shows. That sometimes is a relatively simple process, and sometimes it's a relatively difficult process. So I want to assure you it can take as little as three weeks and can take as much as three months. All right? So please don't get nervous if, you know, four or five weeks go by and you haven't seen a decision from me. That, I promise I will work on it diligently and I will not allow it to fall behind the filing cabinet or something of that nature. Okay? Do you have any questions for me, sir?
>
> CLMT: No, I don't.
>
> ALJ: Okay. Counsel, questions, comments, things I forgot to do?
>
> ATTY: I don't believe so your Honor.

13

ALJ: Okay. All right. We'll close the record, close the hearing.

R. pp. 345-346. The record undisputably reveals that the Plaintiff, who was represented by counsel at the hearing, had every opportunity to present additional evidence, or to keep the record open for the admission of other evidence arising after the conclusion of the hearing. Dr. Gates' letter was written approximately six weeks after the ALJ issued his decision denying the Plaintiff's claim. R. pp. 23, 293-294. It was entirely proper for the Plaintiff to submit this new evidence to the Appeals Council, which received the letter into evidence and made it a part of the administrative record. R. p. 10. Nevertheless, the ALJ affirmatively asked the Plaintiff's attorney, on two separate occasions, whether there was a need for "post-hearing development." R. pp. 304, 345-346. The Plaintiff's attorney clearly informed the ALJ that he saw no need for the admission of additional evidence. Given the position taken by the Plaintiff on the date of the hearing, it is disingenuous for him to blame the ALJ for failing to develop the administrative record. He was "afforded ample opportunity to present his best evidence of disability. He failed to do so." *Musgrave*, 966 F.2d at 1377. The ALJ was not required to act as the Plaintiff's attorney. *Id.* Having declined the ALJ's offer to keep the record open for the admission of additional evidence, the Plaintiff cannot now escape the consequences of his own acquiescence in the closing of that record.

The Appeals Council denied the Plaintiff's request for review. R. pp. 6-9. Consequently, the ALJ's decision became the final decision of the Commissioner in this case. R. p. 6. Dr. Gates' letter, of course, was not available to the ALJ at the time of his decision. The Court can consider this letter in determining whether a remand is appropriate only upon a showing of "good cause" by the Plaintiff

14

as to why this material evidence was not presented to the ALJ in the first instance.[7] Although the Courts of Appeals are divided on this question, this Court is bound by the prior decisions of the U.S. Court of Appeals for the Third Circuit.[8] In *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001), the Court of Appeals explained that while "evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review once the Appeals Council has denied review." *Matthews*, 239 F.3d at 593. This exclusionary rule is inapplicable where the Appeals Council accepts the case for review and makes "a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts." *Id.*, quoting *Eads v. Secretary of DHHS*, 983 F.2d 815, 817 (7th Cir. 1993). In this case, the Appeals Council did not make such an independent decision, so the exclusionary rule established in *Matthews*

---

[7]The sixth sentence of 42 U.S.C. § 405(g) states as follows: "The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based."

[8]Compare *Higginbotham v. Barnhart*, 405 F.3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F.3d 41, 45 (2nd Cir. 1996), *O'Dell v. Shalala*, 44 F. 3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F. 3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F. 2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of DHHS*, 953 F. 2d 93, 96 (4th Cir. 1991) (en banc), (holding that evidence not submitted to the ALJ but later submitted to the Appeals Council, which later denies review, should be considered by the District Court), with *Matthews v. Apfel*, 239 F. 3d 589, 593-594 (3rd Cir. 2001), *Falge v. Apfel*, 150 F. 3d 1320, 1322-1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 142 L. Ed. 2d 905, 119 S. Ct. 907 (1999), *Cotton v. Sullivan*, 2 F. 3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of DHHS*, 983 F. 2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the ALJ but later submitted to the Appeals Council, which later denies review, should not be considered by the District Court unless the claimant shows good cause for not having submitted the evidence to the ALJ). See also *Mills v. Apfel*, 244 F. 3d 1, 4-6 (1st Cir. 2001), (holding that an ALJ cannot be faulted for failing to consider unavailable evidence, but that "an Appeals Council refusal to review the ALJ may be reviewable where it gives an egregiously mistaken ground for its action.").

15

is applicable. The Plaintiff concedes this point. Document No. 10 p. 8. Furthermore, he offers "no explanation" for his failure to request Dr. Gates' opinion sooner. *Id.* Under these circumstances, it is clear that the Plaintiff has not shown "good cause" for failing to obtain Dr. Gates' opinion in time for the ALJ to take it into consideration. Accordingly, this Court cannot consider it.

Based upon the record before it, the Court must conclude that the final decision of the Commissioner is "supported by substantial evidence." 42 U.S.C. § 405(g). For this reason, the Court must deny the Plaintiff's Motion for Summary Judgment (Document No. 9) and grant the Commissioner's Motion for Summary Judgment (Document No. 13).

An appropriate Order follows.

**AND NOW**, this 17th day of January, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 13) is GRANTED.

BY THE COURT:

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**